```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
PRISCILLA REEDY               :
                              :
v.                            :   Civ. No. 3:14CV1432 (HBF)
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :   February 13, 2017
                              :
------------------------------x
```

## RECOMMENDED RULING ON CROSS MOTIONS

Plaintiff Priscilla Reedy brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her a waiver of recovery of an overpayment of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse and remand the case with instructions to waive the overpayment. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Commissioner's Decision and for Remand **[Doc. #15]** is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #16]** is **GRANTED**.

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed.

Plaintiff began receiving DIB on June 1, 1998. [Certified

1

Transcript of the Record, Compiled on April 28, 2015, (hereinafter "Tr.") at 8B-8E, 15]. On April 22, 2011, the Social Security Administration ("SSA" or "agency") issued a notice informing plaintiff that she had been overpaid DIB in the amount of $8,896.30, from September 1, 2008 to March 1, 2009 and for May 2010. [Tr. 15, 64-70]. This overpayment was the result of plaintiff performing substantial gainful activity following a trial work period. [Tr. 15, 64-70]. On May 9, 2011, plaintiff requested a waiver of the overpayment on the grounds that she was not at fault in causing the overpayment. [Tr. 15, 81-92]. On May 10, 2011, plaintiff's waiver request was denied. [Tr. 93-94]. Following a personal conference with the agency on June 20, 2011, plaintiff's waiver request was again denied on June 25, 2011. [Tr. 15, 100-01].

On May 29, 2012, plaintiff appeared before Administrative Law Judge ("ALJ") Robert DiBiccaro for an administrative hearing and testified. [Tr. 15, 107, 184-220]. On July 27, 2012, ALJ DiBiccaro denied the request for waiver of repayment. [Tr. 15-19]. He determined that plaintiff was overpaid DIB in the amount of $8,896.30; that she was at fault in causing the overpayment; and that recovery of the overpayment was not waived. [Tr. 15-19]. The Appeals Council denied plaintiff's request for review on July 25, 2014, making the ALJ's decision the final decision of the Commissioner. [Tr. 4-8A]. The case is now ripe for review

2

under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse the Commissioner's decision.

## II. STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the

Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that, in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

IV. **BACKGROUND FACTS**

On or about March 2000, plaintiff was notified by the agency that she was entitled to receive DIB, beginning in June 1998. [Tr. 8B].

On October 24, 2007, the agency issued a letter to plaintiff informing her that she had worked eight months of her trial work period [Tr. 26]. The letter stated that plaintiff had worked from November through December 2006 and February through July 2007, and that plaintiff's claim would "be reviewed from time to time to see if [she was] still eligible for benefits based on disability." [Tr. 26]. Plaintiff was informed she could work and earn any amount of money for up to [nine]

5

> months. (The months do not have to be in a row.)
> During this time, called a trial work period, [she
> could] still get her disability payments ... [T]he
> trial work period is not over until [nine] work months
> are completed in a period of 60 months in a row.

[Tr. 28-29]. This letter was mailed to plaintiff at her address in Gales Ferry, Connecticut. [Tr. 26].

In a Work Activity Report dated August 3, 2010, plaintiff reported that she worked for Mashantucket Pequot Gaming from June through August 2008 for 40 hours per week at $8.45 an hour. [Tr. 41]. Plaintiff also worked for the Boston Regional Census from April 27 through May 31, 2010, for 10 hours a week at $17.00 per hour. [Tr. 41].

On August 17, 2010, the agency sent a letter to Mashantucket Pequot Gaming, asking for wage verification. [Tr. 50]. Mashantucket responded on September 8, 2010, indicating that plaintiff was employed by Mashantucket from April 4, 2008 through March 24, 2009. [Tr. 52]. Plaintiff's 2008 total yearly earnings from Mashantucket were $20,607.80; her 2009 total yearly earnings from Mashantucket were $8,307.93. [Tr. 52].

On April 20, 2011, the agency determined that plaintiff's trial work period ended after May 2008. [Tr. 56]. It was determined that the nine months constituting plaintiff's trial work period were November through December 2006, February through July 2007, and May 2008. [Tr. 56].

On April 22, 2011, the agency issued a Notice to plaintiff,

6

informing her that she was no longer entitled to DIB "for September 2008 through March 2009 and May 2010 because of substantial work." [Tr. 64]. The agency concluded that plaintiff was overpaid $8,896.30. [Tr. 65; 74-77].

On May 9, 2011, plaintiff applied for a waiver of the overpayment on the grounds that she was not at fault for the overpayment and was unable to make repayment. [Tr. 81-88].

Plaintiff's request for a waiver was denied on May 10, 2011. [Tr. 93-94]. The agency found that: the "overpayment was caused by working while collecting [her] Social Security Disability benefits and earning above the substantial gainful activity amount after [her] trial work period which ended in [May] 2008." [Tr. 93]. Plaintiff was informed on October 24, 2007, that she had completed eight months of her nine-month trial work period; and that benefits would only continue at the completion of her trial work period if she was no longer engaging in substantial gainful activity.[1] [Tr. 94].

---

[1] The Waiver Determination notice stated that plaintiff was at fault because:

> You were collecting Social Security Disability benefits and had previously worked and had been informed on 10/24/2007 that you had completed 8 months of your trial work period from 11/2006-7/2007. On that notice it explained to you that you have a 9 month trial work period and once the 9 months are completed your benefits would continue if you are disabled and your earnings are not over the monthly substantial gainful activity amount.

7

On June 4, 2011, the agency denied plaintiff's request for a waiver; she was scheduled to review her file on June 13, 2011, and scheduled for a personal conference on June 20, 2011, to dispute the decision. [Tr. 102-03].

On June 25, 2011, the agency again denied plaintiff's request for a waiver. [Tr. 100-01]. The agency found that: plaintiff was on notice, as of October 24, 2007, that she had worked eight of the nine months in her trial work period and that the "trial work months do not have to be in a row"; the October 24, 2007, letter made no statements that plaintiff was entitled to a new trial work period each time she began a new job; and there was no evidence that plaintiff had reported any work until a work review was initiated by the agency in 2010. [Tr. 101]. Thus, there was no evidence that plaintiff contemporaneously reported her work activity to the agency. [Tr. 101]. The agency found, "Claimant at fault for the overpayment due to not reporting any of her work from 2008-2010." [Tr. 101].

On May 29, 2012, plaintiff completed a worksheet detailing her monthly income and expenses. [Tr. 148-52]. Plaintiff reported that her monthly income totaled $1,889 representing $640 in wages from Walmart; $1,149 in Social Security Disability Insurance Benefits; and $100 in food stamps. [Tr. 149]. She

---

[Tr. 94].

reported that total monthly expenses totaled $1,629, representing rent, food, utilities, clothing, credit card payments, property taxes, insurance, medical and dental care, and charitable donations. [Tr. 150].

Plaintiff sought a review of the ALJ's decision by the Appeals Council on September 26, 2012, submitting a letter brief with new evidence for the Appeals Council's consideration. [Tr. 4-8A]. Included in this evidence were statements from Navy Federal Credit Union that were mailed to the same address in Gales Ferry as the agency's letter dated October 24, 2007.[2] [Compare Tr. 26 and 176-83].

## V. DISCUSSION

On appeal, plaintiff does not dispute that an overpayment was in fact made, nor does she challenge the Commissioner's computation of earnings attributed to her or the amount of that overpayment. [Tr. 17]. The only issue raised on appeal is whether there is substantial evidence to support the ALJ's findings that plaintiff was not "without fault" in incurring the overpayment <u>and</u> that recovery of the overpayment from her would neither be contrary to the purpose of Title II of the Act nor be against equity and good conscience.

---

[2] The statements from plaintiff's Navy Federal Credit Union account are for the time period July 1, 2010 through July 30, 2012. [Tr. 176-83].

The statutory framework for recovery of overpayment by the Secretary is provided in 42 U.S.C. §404(b)(a). The statute also provides that an overpayment shall not be recovered from "any person who is without fault if such adjustment or recovery would defeat the purpose of [Title II of the Act] or would be against equity and good conscience." 42 U.S.C. §404(b)(1) (emphasis added); see also 20 C.F.R. §404.506(a). Regulations interpreting this provision requires the presence of both elements before recovery of overpayment may be waived. Peralta ex rel. Peralta v. Barnhart, 204 F. Supp. 2d 534, 537 (E.D.N.Y. 2002); see Greenberg v Comm'r of Social Security, No. 3:95CV593(AWT), 1998 WL 229849, *3 (D. Conn. Mar. 30, 1998) (citations omitted) ("Whether the claimant is without fault is a threshold determination. If the claimant is not without fault, the Secretary is not required to proceed further to address the second requirement.").

The Court first considers the ALJ's determination that plaintiff was not "without fault" in incurring the overpayment.

"Fault as used in without fault ... applies only to the individual." 20 C.F.R. §404.507. Even though the Commissioner "may have been at fault in making the overpayment, that fact does not relieve the overpaid individual ... from liability for repayment if such individual is not without fault." Id.

10

> What constitutes fault ... on the part of the overpaid
> individual ... depends upon whether the facts show
> that the incorrect payment to the individual ...
> resulted from: (a) An incorrect statement made by the
> individual which he knew or should have known to be
> incorrect; or (b) Failure to furnish information which
> he knew or should have known to be material; or (c)
> With respect to the overpaid individual only,
> acceptance of a payment which he either knew or could
> have been expected to know was incorrect.

Id.

In determining whether the claimant was without fault, the ALJ must consider the claimant's age, intelligence, education and physical and mental condition. 42 U.S.C. §404(b); 20 C.F.R. §404.507. "No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault." Center v. Schweiker, 704 F.2d 678, 680 (2d Cir. 1983)(citations omitted). "Thus, the court need not enquire into the subjective state of mind of the claimant." Greenberg, 1998 WL 229849, *3 (citation omitted). "The plaintiff has the burden of demonstrating that she is entitled to a waiver." Peralta ex rel. Peralta, 204 F. Supp. 2d at 537; see Greenberg, 1998 WL 229849, *4 ("The burden is upon the claimant to establish the negative prerequisite ('without fault').") (citation and quotation marks omitted).

For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's findings. It is undisputed that plaintiff received an overpayment of benefits and plaintiff does not dispute the Commissioner's computation of

the amount of that overpayment. In addition, she knew or should have known that she was not entitled to the continuing disability benefits after she received the SSA's notice on October 24, 2007, informing her that she had worked eight months of her nine month trial work period. [Tr. 26; 176-83]. After the notice was issued, it is undisputed that plaintiff was employed from April 4, 2008 to March 24, 2009 and in May 2010, thus reaching her nine month trial work period limit. [Tr. 41; 52]. Further, plaintiff was admittedly aware of the reporting requirements and had reported her work status and wages in the past. [Doc. #15 at 9 (citing Tr. 41 (2010 Work Activity Report dated 8/3/10); 52 (Mashantucket 2010 wage verification dated 9/8/10); 154-56; 203-16)]. No evidence in the record, including about plaintiff's age, intelligence, and any physical, mental, education or linguistic limitation, would render her unable to comply with reporting requirements during the relevant period. 20 C.F.R. §404.507.

Plaintiff essentially argues that she is without fault because "[a]t no time did anyone tell [her] that her nine month trial work period was <u>cumulative</u> rather than consecutive." [Doc. #15 at 9, 12-17 (emphasis added)]. The ALJ reasonably found that contention not credible.[3] As the ALJ observed, plaintiff was sent

---

[3] The ALJ's credibility finding is supported by substantial evidence. The ALJ found that

correspondence from the SSA informing her of her reporting responsibilities and the trial work period and she testified that she reported her work activity to the agency. [Tr. 15-19; see Tr. 28 ("you can work and earn any amount of money for up to 9 months. (The months do not have to be in a row.")]. The ALJ properly considered plaintiff's "age, intelligence, and any physical, mental, educational, or linguistic limitations" in making this determination. Gusky v. Astrue, 954 F. Supp. 2d 180, 191-92 (W.D.N.Y. 2013) ("Credibility findings necessarily include assessment of a claimant's age, comprehension, memory, and physical and mental condition). Plaintiff did not assert any limitations. 20 C.F.R. §404.507. As set forth above, the record supports the ALJ's finding that "claimant was on notice that her earnings affected benefits and that she was not without fault in causing or accepting the overpayment." [Tr. 18; 28-29; 41; 56; 64-65; 74-77; 203-06; 208-11]. Here, plaintiff was not entitled

---

> the claimant's excuse of not understanding the trial work period and reporting duties is not credible in view of the correspondence from Social Security informing the claimant of her reporting responsibilities, the trial work period, substantial gainful activity and the extended period of eligibility. In fact, the claimant knew from the beginning that she needed to contact Social Security regarding any work activity, and did so as she testified to that fact at the hearing.

[Tr. 18].

13

to receive DIB payments because she worked in excess of the trial work period.

Plaintiff argues that there is no proof that the October 24, 2007, letter was sent to her proper address at the time. As defendant correctly states, "the agency's October 2007 letter was mailed to plaintiff's address in Gales Ferry and plaintiff's financial records covering the period from July 1, 2010 to July 30, 2012, indicated that she was still living and/or receiving mail at the Gales Ferry address." [Doc. #16 at 10 (citing Tr. 26; 176-83)]. Plaintiff represented to the Appeals Council in October 2012, that the Gales Ferry address is her marital home and she is married but living separately from her husband. [Tr. 155]. Plaintiff has not sustained her burden of proof to support her contention that she did not receive the October 24, 2007 letter. [Doc. #15 at 15; Peralta ex rel. Peralta, 204 F. Supp. 2d at 537; see Greenberg, 1998 WL 229849, at *4].

Because plaintiff did not meet her burden of establishing that she was "without fault," the Court finds that she was properly denied a waiver of recovery. See 42 U.S.C. §404(b); 20 C.F.R. §§404.506(a); 404.507. In light of the Court's conclusion that plaintiff was not without fault, the Court need not, and does not, reach the issues of whether recovery would defeat the purpose of Title II of the Act, or would be against equity and good conscience. 20 C.F.R. §404.506; Valente v. Sec'y of Health

& Human Servs., 733 F.2d 1037, 1042 (2d Cir. 1984)("Assuming that the recipient can show that he is without fault, the statutory standard places the burden on him to show also that repayment would either be inequitable or would defeat the purposes of the Act.").

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Order Reversing the Commissioner's Decision and for Remand **[Doc. #15]** is **DENIED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #16]** is **GRANTED**.

This is a recommended ruling. Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Impala v. United States Dept. of Justice, --- Fed. App'x ---, 2016 WL 6787933, at *1 (2d Cir. Nov. 15, 2016)(summary order)(failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); cf. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

In accordance with the Standing Order of Referral for

15

Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to assign this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part. <u>See</u> Fed. R. Civ. P. 72(b)(3); D. Conn. L. Civ. R. 72.1(C)(1) for Magistrate Judges.

    SO ORDERED at Bridgeport this 13th day of February 2017.

                                 ____/s/_____
                                 HOLLY B. FITZSIMMONS
                                 UNITED STATES MAGISTRATE JUDGE